IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHERYL TOVAR, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO._____ |
| | § | |
| CITY OF DALLAS, | § | |
| | § | |
| Defendant | § | |

COMPLAINT

TO THE HONORABLE COURT:

COMES NOW Cheryl Tovar, Plaintiff, complaining of the City of Dallas, Defendant.

I.   PARTIES

1. Plaintiff Tovar is an individual, residing in Dallas County, Texas.  The City of Dallas is a municipal corporation, headquartered at 1500 Marilla St., Dallas, Texas 75201.

II.   JURISDICTION AND VENUE

2. Subject matter jurisdiction over the City of Dallas lies under 28 U.S.C. § 1331 (federal question jurisdiction) because, as will be shown below, Tovar alleges causes of action under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.,* and the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 and 42 U.S.C. § 1983.  *In personum* jurisdiction lies against the City of Dallas because all of the facts giving rise to the claims asserted herein took place in the Dallas Division of the Northern District of Texas.  Venue properly

lies in the Dallas Division pursuant to 28 U.S.C. § 1391 (b) (i) in that this case is being riled in a district and division wherein the Defendant resides.

### III.    SERVICE OF PROCESS

3. The City of Dallas may be sued by serving its Mayor, Eric Johnson, at the headquarters of the City of Dallas, 1500 Marilla St., Dallas, Texas 75201.

### IV.    FACTS

4. Plaintiff started working for the City on December 12, 2017.  Later, she was wrongfully terminated, as will be seen below. Plaintiff received her offer letter, that is, an offer for a driving position in sanitation brush. What followed was a consistent pattern of discrimination by the City due to Plaintiff's race, gender, and disability. Plaintiff had previous experience with operating a semi-tractor trailer. Plaintiff attended her first orientation class with the City on January 31, 2018. The ostensible reason for the termination was having received five "points" within twenty-four months.  However, she was never written up and received no verbal warnings leading up to the termination. The real reason for the alleged illegal discrimination against her was based on race (she is African American and Hispanic), gender, and disability, in this case, post-traumatic stress disorder.

5. On February 4, 2018, Plaintiff arrived at Sanitation Department District 4 and was placed under supervisor Reginald Hall.  Hall had been put in a supervisor position even though he had no training for it.

6. Supervisor Hall placed Plaintiff with driver Wendell Arrington for training in a sanitation skilled automated truck for two weeks to collect recycling in front of a children's home.

7. Plaintiff documented on her application that she did not have any experience operating these types of sanitation trucks; nonetheless, she completed a probationary period with good reviews.  Plaintiff never received training in the alleys which was crucial to her effectiveness.  She needed to have training due to obstacles such as gas meters and power lines.  Defendant City failed to inform her of prior citizens complaints about the alleys.

8. Plaintiff had informed Supervisor Hall that she was on medication and was being treated by a doctor for post-traumatic stress disorder in March, 2018.

9. Plaintiff was placed in an older automated truck with a defective engine that caused increasing temperatures in the truck and exposure to inclement weather conditions with no heat or air in tight alleys.  It had a history of breakdowns. Plaintiff was pressured to drive trucks regardless of their poor condition and to complete routes, often with no breaks for lunch or otherwise.

10. Plaintiff had previously struck a gas meter due to the poor condition of the city's truck and its lack of training for her.  This caused extreme danger to her and others and raised the possibility of entanglement in power lines.  Plaintiff repeatedly asked her manager Steve Thurman to be moved to prevent future dangerous incidents; he responded by putting Plaintiff under the supervision of the City's Juan Somodio for one day.

11. However, the City's Steven Thurman moved Plaintiff to be under the supervision of Bobby White back in the skilled automated truck section where Plaintiff had had previous dangerous incidents in the alleys.  Plaintiff asked Thurman to move her again, and he placed her under Supervisor Gary Cannon.  Under Cannon, Plaintiff operated a rear end loader truck for over two months and then was unfairly placed on administrative leave.

12. Plaintiff was denied cross training by Thurman. However, it is significant that males and Caucasians with demerit points in twenty-four months consistently had no history of disciplinary action. Plaintiff suffered gender discrimination because she was denied a cross training request by Steven Thurman, claiming 24 "points" within twenty-four months. However, males with the same points received training, promotion and transfer. Plaintiff was placed on administrative leave for similar demerit points and then was wrongfully terminated.

13. Plaintiff was discriminated by all of the City's agents mentioned above due to race, gender, and disability, and failure to stop the harassment that will be described below.

14. The City's agents mentioned above as well as from the City's Shamoan Sledge and William Smith continually harassed and bad-mouthed Plaintiff. However, the City's higher management, including – again, Steven Thurman took no action to stop it thereby ratifying it and adopting this misconduct as City policy. Plaintiff also submitted a doctor's note concerning her post-traumatic stress disorder to Thurman and the City's Regina Marie, this was ignored, thereby constituting another instance of disability discrimination. Plaintiff was also discriminated against by the City's agent on gender grounds.

15. Plaintiff also suffered gender and racial discrimination from the City's Bobby White, Douglas O'Rourke, and Richard Cameron. Plaintiff even informed the City's Mayor, Eric Johnson, the City manager, and the City council members of this, and nothing was done because, apparently, discrimination was the City policy. Defendant is liable for the actions of all of the above named agents pursuant to the doctrine of *respondeat superior.* Plaintiff also suffered gender discrimination by Thurman, Bobby White, and Byron Harris, all city

agents, who sabotaged her employment by falsely accusing her of a scam as if she cost the City $8,000 to $10,000 which she did not. Plaintiff was threatened by City contractor Protect Environment Services and its owner Richard Cameron. This was reported to the City police, audit, mayor, city manager, and council members who did nothing. The City agents who performed these misdeeds still work for the Defendant City.

16. Plaintiff performed various jobs for the City of Dallas. She performed all of these well so long as she received proper training. One was for the Sanitation Department driving a truck which mechanically emptied trash bins for which she was inadequately trained. Thus, Plaintiff is a member of three protected classes: (1) race; (2) gender; and (3) disability. Plaintiff has received her Equal Employment Opportunity Commission "right to sue" and, therefore, tovahas exhausted her administrative remedies, and the suit is timely.

V.   CAUSES OF ACTION

17. Plaintiff incorporates the allegations above. The conduct of Defendant and its agents give rise to causes of action under the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.,* (for the racial and gender discrimination) as well as the Americans with Disabilities Act (for the disability discrimination). Moreover, the fact that the City did not punish males and Caucasians for even worse conduct the the (falsely alleged) misconduct of the Plaintiff violates her rights under the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution. Therefore, the conduct of the City and its agents violates 42 U.S.C. §1983 because they acted under color of law to deprive Plaintiff of her Constitutional Rights.

VI.   COMPENSATORY DAMAGES

18. Plaintiff has incurred two types of compensatory damages: (1) back pay; and (2) emotional distress, mental anguish and reduced ability to enjoy life.  The back pay represents the amount of money Plaintiff would have made had she not been terminated. It is presently $107,000.  The second type is inherently unliquidated.  Plaintiff reasonably expects a large award in this respect.  Plaintiff has suffered depression, anxiety, and loss of sleep as a result of the wrongful termination.  Indeed, the Plaintiff was forced to be homeless for a considerable period of time due to the conduct of the City and its agents. Defendant's conduct has made her post traumatic stree disorder worse. Plaintiff expects these sorts of damages to be in excess of $400,000.  Plaintiff requests judgment for same.

## VII.    EXEMPLARY DAMAGES

19. Because the conduct of the Defendant and its agents were intentional and malicious, Plaintiff will be entitled to an award of exemplary damages.  Plaintiff requests the maximum amount of exemplary damages allowed by Tex. Civ. Prac. & Rem. Code § 41.008.

## VIII.    ATTORNEYS' FEES

20. Pursuant to the above noted statutes, Plaintiff will be entitled to an award of reasonable attorneys' fees.  These are estimated to be $80,000 through the jury trial; an additional $70,000 in the event of an appeal to the Court of Appeals; and, an additional $70,000 in the event review is sought in the Supreme Court of the United States.  Plaintiff requests judgment for same.

## VI.    PRAYER

Plaintiff prays that (1) she be awarded all of the compensatory damages requested hereinabove; (2) she be awarded all exemplary damages requested hereinabove; (3) she

be awarded all reasonable attorneys' fees requested hereinabove; (4) she be awarded all pre-judgment and post-judgment interest allowable by law: and (5) she be awarded such other damages, whether general or special, at law of in equity, to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

By /s/Dan S. Boyd
Dan S. Boyd
State Bar No. 02765500
BOYD & STAPLETON
P.O. Box 803596
Dallas, Texas 75380
dan@boydstap.com
Tel.    (214)478-0152
Fax:    (214)481-1878
Web    www.boydstap.com

JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all factual issues.